```
         UNITED STATES DISTRICT COURT FOR THE
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

C.S., individually and
on behalf of a proposed
class of similarly situated
West Virginia residents,

      Plaintiff,

v.                                        Civil Action No. 2:08-921

UNITED BANK, INC.,
a West Virginia corporation, and
UNITED BANKSHARES, INC.,
a West Virginia corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are the plaintiff's motion to remand and the defendants' motion to dismiss. Both motions were filed on August 12, 2008. Because the court lacks subject matter jurisdiction, the motion to remand is granted.

I.

Plaintiff, C.S.,[1] commenced this proposed class action

---

[1] This action involves allegations of identity theft. In order to avoid any further loss, the complaint identifies the plaintiff by his or her initials. (Amend. Compl. ¶ 1).

in the Circuit Court of Kanawha County, West Virginia on April 23, 2008 and filed an amended complaint on June 2, 2008. Plaintiff is a resident of Kanawha County, West Virginia. (Amend. Compl. ¶ 1).  Defendants, United Bank, Inc. and United Bankshares, Inc. (collectively, "United Bank"), are West Virginia corporations with a joint principal place of business located in Wood County, West Virginia.  (Id. ¶ 2; Not. of Rem. ¶ 2).  United Bank provides banking services and products to customers throughout West Virginia, Virginia, Maryland, Washington, D.C. and Ohio and is a member of, and is regulated by, the Federal Deposit Insurance Corporation ("FDIC").  ("Not. of Rem. ¶ 2).[2]

The facts, as set forth in the amended complaint, are as follow.  Plaintiff is a member of a proposed class of approximately two-hundred and twenty (220) individuals who were customers of, or held accounts with, United Bank.  (Amend. Compl. ¶ 6).  In their capacity as customers and account holders, plaintiff and the proposed class members were required to provide confidential information to United Bank.  (Id.)  The confidential information included social security numbers, account information and "other pertinent and sensitive information."  (Id.)  United

---

[2] It is unclear from the submissions of the parties whether United Bank, Inc. is the sole member of the FDIC or whether both defendants are members.

Bank promised plaintiff and the proposed class members that their confidential information would be safeguarded.  (Id. ¶ 7).  The following customer privacy statement was issued by United Bank to the plaintiff and the proposed class members:

> We protect the privacy of your personal financial information in several ways: through technology, by establishing detailed security procedures and internal controls and by making sure our employees understand the crucial role they play in safeguarding customer information.
>
> We limit access to your personal financial information to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic and procedural safeguards that comply with federal standards to protect personal financial information.

(Id. ¶ 8).  The customer privacy statement provides further that:

> We may share personal financial information with companies that work for us to provide products and services for you, such as companies that print your checks, process your credit card transactions or mail our account statements to you.  We may also share personal financial information with companies that market our products and services to you.  As appropriate, we may disclose to such companies information such as your name, address, account balance and account history.
>
> All companies that work for use or act on our behalf are contractually obligated to keep the information that we share with them confidential and use the information only to provide the products and services that we have asked them to provide.

(Id. ¶ 9).  According to the amended complaint, United Bank never advised its customers that affiliated companies would be provided

customer social security numbers, driver's license numbers and account numbers.  (Id. ¶ 10).

In April of 2008, plaintiff and the proposed class members were notified that information they provided to United Bank had been stolen.  (Id. ¶ 11).  The stolen information included social security numbers and "other confidential and sensitive information entrusted to United Bank."  (Id.)  The theft was the result of a criminal enterprise to access United Bank customers' social security numbers and other confidential and sensitive information in order to utilize the information for profit at the expense of the proposed class members.  (Id.)  The amended complaint states that because of the defendants' acts and omissions, plaintiff and the members of the proposed class suffered "immediate and quantifiable harm."  (Id. ¶ 12).

Plaintiff's five-count amended complaint sets forth the following claims: Count I, Negligence; Count II, Breach of Contract; Count III, Breach of Fiduciary Duty; Count IV, Violation of Consumer Protection Act; Count V, Statutory Violations.  The amended complaint states that "[a]ll claims herein arise under West Virginia statutory and/or common law and no federal questions are presented," and that the action "is not subject to original or removal jurisdiction in the United States

4

District Court of the Southern District of West Virginia. (<u>Id.</u> ¶ 5). Despite this assertion, defendants removed on July 14, 2008, invoking the court's federal question jurisdiction. (Not. of Rem. ¶ 7). On September 23, 2008, the action was stayed pending resolution of plaintiff's motion to remand.

## II.

In general, if federal district courts possess original jurisdiction over a civil action commenced in state court, the action "may be removed by the defendants or the defendants." 28 U.S.C. § 1441(a). Federal question jurisdiction is one form of original jurisdiction. It exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Congress gave federal-question jurisdiction to district courts under 28 U.S.C. § 1331 to hear 'only those cases in which a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" <u>Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.</u>, 106 F.3d 1146, 1154 (4th Cir. 1997). In determining whether a claim "arises under" federal law courts

5

apply the well-pleaded complaint rule, pursuant to which "courts ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction."  <u>Piney v. Nokia, Inc.</u>, 402 F.3d 430, 442 (4th Cir. 2005) (internal quotation marks omitted).  "[A]ctions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question."  <u>In re Blackwater Sec. Consulting, LLC</u>, 460 F.3d 576, 584 (4th Cir. 2006) (citing <u>Louisville & N. R. Co. v. Mottley</u>, 211 U.S. 149, 152 (1908)).  The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  <u>Caterpillar v. Williams</u>, 483 U.S. 386, 392 (1987).

  The party seeking removal bears the burden of establishing federal jurisdiction.  <u>See</u> <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994); <u>In re Blackwater</u>, 460 F.3d at 584.  Because removal jurisdiction implicates significant federalism concerns, it is strictly construed.  <u>See</u> <u>Mulcahey</u>, 29 F.3d at 151.  If federal jurisdiction is doubtful, the case must be remanded.  <u>See</u> <u>id.</u>; <u>Palisades Collections LLC v. AT&T Mobility LLC</u>, 552 F.3d 327, 336

(4th Cir. 2008).

### III.

Defendants oppose plaintiff's motion to remand on two grounds.  They argue that the court possesses federal question jurisdiction because the claims in the complaint necessarily raise substantial questions of federal law.  (Resp. to Mot. to Remand at 4-10).  According to the defendants, plaintiff's claims cannot be resolved without resort to Title V of the Gramm-Leach-Bliley Act ("GLBA").  See 15 U.S.C. §§ 6801 through 6809.  In a related argument, defendants contend that plaintiff's state law claims are completely preempted by the GLBA.  (Id. at 10-12).  In response, plaintiff asserts that the well-pleaded complaint rule precludes removal and that the GLBA does not completely preempt state law.  (Mem. in Supp. Mot. to Remand at 4-10).

A. Substantial Question of Federal Law

In applying the well pleaded complaint rule, the "first step is to discern whether federal or state law creates the cause of action."  Pinney, 402 F.3d at 442 (internal quotation marks omitted).  If federal law creates the cause of action, federal

courts have jurisdiction. See Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004). Defendants concede that if the doctrine of complete preemption does not apply, plaintiff has asserted causes of action under West Virginia law. (Resp. to Mot. to Remand at 10-11). While "[t]he vast majority of lawsuits arise under the law that creates the cause of action," there is a "small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." Dixon, 369 F.3d at 816 (quoting Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806 (4th Cir. 1996)). Defendants seek to place this case within that small class, and to do so, they must establish two things: "(1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." Id.; see also Pinney, 402 F.3d at 224 (same).

Title V of the GLBA declares the policy of Congress to be "that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic information." 15 U.S.C. § 6801(a). The parties agree

8

that United Bank is a "financial institution" as the term is defined by the GLBA.  See § 6809(3).  As a financial institution, United Bank is subject to the GLBA's various notification and disclosure requirements, see §§ 6802 and 6803, and must comply with the regulations established pursuant to the Act.  See § 6804(a)(1); see also 12 C.F.R. §§ 332.1 through 332.18.  Title V of the GLBA, and the regulations promulgated thereunder, are enforced "by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law."  § 6805(a).[3]

Titled "Relation to State laws," § 6807 of the GLBA provides:

> (a) In general. This subtitle and the amendments made by this subtitle shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subtitle, and then only to the extent of the inconsistency.

---

[3] The "Federal functional regulators" are: the Board of Governors of the Federal Reserve System; the Office of the Comptroller of the Currency; the Board of Directors of the Federal Deposit Insurance Corporation; the Director of the Office of Thrift Supervision; the National Credit Union Administration Board; and the Securities and Exchange Commission.  See § 6809(2).

> (b) Greater protection under State law. For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subtitle if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subtitle and the amendments made by this subtitle, as determined by the Federal Trade Commission, after consultation with the agency or authority with jurisdiction under section 505(a) of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

Defendants argue that, through the claims in the complaint, plaintiff seeks to impose a duty upon United Bank that is inconsistent with the requirements of the GLBA. The argument goes that because the GLBA "expressly provides that any inconsistent state law is preempted, Plaintiff's allegations are tantamount to a direct challenge to the sufficiency, validity and propriety of the Act." (Resp. to Mot. to Remand at 5). Thus, according to the defendants, "Plaintiff simply cannot obtain relief on any count unless the Act is first addressed." (Id.) The defendants' argument fails because even if the claims in the complaint do seek to impose a duty upon United Bank that is inconsistent with the GLBA, jurisdiction is still lacking.

Implicit in defendants' argument that the claims in the complaint seek to impose a burden upon United Bank that is inconsistent with that imposed by the GLBA is a recognition that

10

plaintiff does not look to the GLBA for redress. Under the well pleaded complaint rule, for a complaint asserting claims under state law to raise a substantial federal question, a disputed question of federal law must be "a necessary element of one of the well-pleaded state law claims." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983); see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2004) ("the question is, does a state law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities."); Pinney, 402 F.3d at 442 ("A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state claims.'"). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd., 463 U.S. at 14; see Pinney, 402 F.3d at 443 (same). The claims in Counts I through III are brought under West Virginia tort and contract law. The

11

claims in Counts IV and V find their foundation in the statutory law of West Virginia.[4]  By their terms, none of these claims requires resolution of a question of federal law.  "For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the <u>plaintiff's</u> complaint establishes that the case 'arises under' federal law."  <u>Franchise Tax Bd.</u>, 463 U.S. at 10 (emphasis in original).  To the extent the GLBA is implicated, it is because the defendants raise the Act in defense.  "But a <u>defendant</u> cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."  <u>Caterpillar</u>, 483 U.S. at 399 (emphasis in original).  Applying the well-pleaded complaint rule, plaintiff's claims do not "arise under" federal law.

B. Complete Preemption

The complete preemption doctrine is a "narrow exception

---

[4] The claim in Count IV is for violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 through 46A-8-102.  Count V asserts a claim under W. Va. Code § 55-7-9 for violation of a statute.

to the well-pleaded complaint rule." Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). It provides "that if the subject matter of a putative state law claim has been totally subsumed by federal law -- such that state law cannot even treat on the subject matter -- then removal is appropriate." Id. at 439-40 (citing Aetna Health Inc. v. Davila, 542 U.S. 200 (2004)). Unlike conflict (or ordinary) preemption, which is a defense, complete preemption is a jurisdictional doctrine. If a state law claim is completely preempted it is "converted into [a] federal claim[], which may be removed to federal court." Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 371 (4th Cir. 2003). Completely preempted claims are, however, "rare." Lontz, 413 F.3d at 441. Indeed, the United States Supreme Court has found only three statutes to completely preempt state law claims. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) (National Bank Act); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (Employee Retirement Income Security Act § 502(a)); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (Labor Management Relations Act).

According to the defendants, § 6807 "makes clear that Congress intended the GLBA to exclusively supply the law in the absence of an official finding of the Federal Trade Commission

13

that state law provides greater protection." (Resp. to Mot. to Remand at 11). Defendants concede that, at least in some circumstances, the GLBA expressly allows state causes of action but argue that "in most cases, such as this one, there is no finding by the proper authority that a state cause of action is allowed." (<u>Id.</u>) Defendants, however, confuse the doctrine of complete preemption with the principles of conflict preemption. Simply because a federal statute supercedes state law in some circumstances, does not mean that state law is completely preempted.

For the doctrine of complete preemption to apply, "the preempting statute must not only create a federal cause of action, but must also show that Congress intended it to 'provide <u>the exclusive</u> cause of action' for claims of overwhelming national interest." <u>Lontz</u>, 413 F.3d at 441 (emphasis in original). The focus of the complete preemption inquiry is "congressional intent." <u>Id.</u> Not only does the GLBA not create "the exclusive cause of action" for claims relating to disclosure of nonpublic information by financial institutions, every court to consider the issue has found that "[n]o private right of action exists for an alleged violation of the GLBA." <u>Dunmire v. Morgan Stanley DW, Inc.</u>, 475 F.3d 956, 960 (8th Cir. 2007)

14

(collecting cases); see also Kathleen A. Hardee, The Gramm-Leach-Bliley Act: Five Years After Implementation, Does the Emperor Wear Clothes?, 39 Creighton L. Rev. 915, 934 (2006) ("One by one, the courts addressing the issue relied upon this provision [§ 6805(a)] to determine that the GLBA did not allow for a private right of action."). Even if the GLBA did create a private cause of action, § 6807(a) of the GLBA expressly preserves state statutes, regulations, orders and interpretations that are not inconsistent with the GLBA. State law affording greater protection than the GLBA is deemed not to be inconsistent with the Act. See § 6807(b). The terms of the GLBA, therefore, do not evince a "congressional intent to extinguish similar state claims by making the federal cause of action exclusive." Lontz, 413 F.3d at 441. Plaintiff's claims are not completely preempted by the GLBA. Because the court lacks subject matter jurisdiction, the case must be remanded. Lacking the power to do so, the court does not reach the defendants' motion to dismiss.

## IV.

It is accordingly ORDERED that plaintiff's motion to remand be, and it hereby is, granted. It is further ORDERED that this action be, and it hereby is, remanded to the Circuit Court

of Kanawha County.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and a certified copy to the clerk of court for the Circuit Court of Kanawha County.

DATED: March 20, 2009

John T. Copenhaver, Jr.
United States District Judge